## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**COURTNEY A. JILEK**,

               Plaintiff,

v.                                                        Hon.
                                                          Mag. Judge
                                                          Case No.: 25-

**BETTER MADE SNACK FOODS
INCORPORATED**,

               Defendant.
_____/

ILANA S. WILENKIN (P61710)
FELDHEIM & WILENKIN, P.C.
Plaintiff's attorneys
30300 Northwestern Hwy., Ste. 108
Farmington Hills, MI 48334
(248) 932-3505, ext. 323
(248) 932-1734 (fax)
ilana@lawsmf.com
_____/

### PLAINTIFF'S COMPLAINT

      Plaintiff, COURTNEY A. JILEK, through her attorneys, ILANA S. WILENKIN and FELDHEIM & WILENKIN, P.C., complains against the above-named Defendant as follows:

### I.       Parties, Nature of Action, Jurisdiction & Venue

1)     Plaintiff ("Mrs. Jilek") brings this action for equitable relief, including, but not limited to, surcharge, under Section 502(a)(3) of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(3), alleging breach of fiduciary duty.   Mrs. Jilek is seeking all available and appropriate compensation under the referenced statutory section, including interest, costs, and attorney fees.

2)     This Court has subject matter jurisdiction over Mrs. Jilek's claim pursuant to ERISA, Section 502(e) and (f), 29 U.S.C. 1132(e) and (f), and 28 U.S.C. 1331.

3)     Mrs. Jilek is James Jilek's (deceased) ("Mr. Jilek") surviving spouse and the designated beneficiary of $50,000.00 in basic life insurance coverage that Mr. Jilek maintained pursuant to his employment with Defendant Better Made Snack Foods Incorporated ("Better Made") and the Better Made Health and Welfare Benefit Plan ("Plan/Policy").  Mrs. Jilek is a resident of Mattawan, MI, Van Buren County.

4)     Better Made is a Michigan corporation conducting business in the Eastern District of Michigan.  Its resident agent and registered address for service of process is Catherine Gusmano, 10148 Gratiot Ave., Detroit, MI 48213.  Better Made sponsored the Plan and is the Plan Administrator.

5)       Mrs. Jilek is bringing this action to enforce the rights and responsibilities under a group life insurance policy ("Policy") issued by The Guardian Life Insurance Company of America ("Guardian") to Better Made, Policy number 00057051, effective 1/1/24. **(Ex. 1)**.

6)       Guardian underwrote various coverages for Better Made under which Mr. Jilek was insured, including long-term disability and the subject basic life insurance.  Upon information and belief, Guardian acted as the Claims' Administrator and communicated with Mr. Jilek regarding those coverages.  Discovery may reveal pertinent information that requires Mrs. Jilek to amend her Complaint.

7)       Upon information and belief, Plante Moran Group Benefits Advisors II, LLC's ("Plante Moran") acted as Better Made's benefits advisor. However, the exact nature and extent of that relationship remain unknown at this point.  Discovery may reveal pertinent information that requires Mrs. Jilek to amend her Complaint.

8)       Pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391, venue is proper in the Eastern District of Michigan.

## II.       **Factual Statement**

9)     Mr. Jilek began working for Better Made on 10/6/03 as a Regional Sales Manager.

10)     As part of his employment benefits package, Mr. Jilek maintained $50,000.00 in basic life insurance coverage under the Plan/Policy. **(Ex. 2)**.

11)     Guardian underwrote the Policy and was the Claims Administrator.

12)     Relevant Policy terms and conditions are as follows:

Your coverage will end on the first of the following dates:

•     The date Your Active Work ends for any reason, except as noted below under Coverage During Leave of Absence. Such reasons include:

   - Disability

You may have the right to continue certain group benefits for a limited time after Your coverage would otherwise end. And, You may have the right to replace certain group benefits with converted policies. **The Employer will notify you of any conversion options available**.

(Ex. 1; PDF, p. 15 / Policy, p.6).  (emphasis added).

**<u>Coverage During Disability</u>**

If Your Active Work ends because You are Totally Disabled, You and Your Employer may agree to continue Your insurance for the amount of basic and voluntary term life insurance for

which You are insured on Your last day of Active Work, subject to continued payment of all required premiums, until the earlier of:

• 12 months; from the date Your Total Disability began.

(Ex. 1; PDF, p. 17 / Policy, p. 8).

**CONVERTING THIS EMPLOYEE BASIC AND VOLUNTARY TERM LIFE INSURANCE**

**If Employment Or Eligibility Ends**

Your group life insurance ends on the date:

Your active Full-Time employment ends; or

You stop being a member of an eligible class.

If Your group life insurance ends, **Your Employer is _responsible_  for providing You Notice of Your Right to Convert**.

(Ex. 1; PDF, p. 28 / Policy, p. 19). (emphasis added).

**If You Are Totally Disabled**

Your group life insurance ends on the date:

• Your active Full-Time employment ends; and

• You are Totally Disabled; and

• You are eligible for Waiver of Premium Benefits pursuant to the Waiver of Premium Benefit Rider, but You have not yet been approved for the Waiver of Premium of Benefit,

You can apply to convert Your group term life insurance to:

- A permanent life insurance policy; or

- Interim term life insurance coverage.

**You can apply to convert up to the full amount of basic** and voluntary life **insurance** for which You are insured under this Certificate on the date Your insurance ends, less any group life insurance for which You become eligible **in the 31 days after Your insurance under this Certificate ends**.

(Ex. 1; PDF, pp. 28-29 / Policy, pp. 19-20). (emphasis added).

**How and When to Convert**
To obtain a Converted Policy, We must receive a written application fully completed by You, and all required premiums within the Conversion Period.  <mark>**Your Employer is _responsible_**</mark> **for providing You with Notice of Your Right to Convert within 15 days of the date Your group life insurance ends**. We will not ask for proof that You are insurable.

(Ex. 1; PDF, p. 30 / Policy, p. 21). (emphasis added).

**Notice of Right to Convert**
**This term means the written notice presented to You by the Employer**, delivered to Your last known address.

(Ex. 1; PDF, p. 40 / Policy, 31). (emphasis added).

**SUPPLEMENTAL RIDER – Accelerated Life Benefit**

You may be eligible for an Accelerated Life Benefit if you meet the following conditions:

- You have a Terminal Condition;

- You supply the required written proof of Your Terminal Condition (see "How To Apply");

- You apply for this benefit in writing while living and before You attain age 60. If You are unable to request this benefit yourself, Your legal representative may request it on Your behalf.

(Ex. 1; PDF, pp. 54-57 / Policy, pp. 45-48).

### SUPPLEMENTAL RIDER – Waiver of Premium Benefit

If You are Totally Disabled, and meet the requirements in "How And When To Apply," We will extend Your Basic and Voluntary life insurance without payment of premiums from You or the Employer in an amount equal to the amount of Basic and Voluntary life insurance for which You are insured on Your last day of Active Work.

To be approved for this benefit, You must:

- Become Totally Disabled before You reach age 60 and while insured by the Certificate; and

- Remain Totally Disabled for at least 9 months in a row.

You should apply for this benefit immediately at the start of Your Total Disability.

**"Total Disability"** and **"Totally Disabled"**: This term means that, due to sickness or injury, You are:

- Not able to perform any work for wages or profit; and

- Receiving Regular and Appropriate Care for the cause of Your Total Disability.

> If You die prior to being approved for the Waiver of Premium
> Benefit and within 12 months of the onset date of Total
> Disability We'll pay Your beneficiary the amount for which You
> were covered as of Your last day of Active Full-Time Work,
> subject to all reductions which would have applied had You
> stayed an active Employee provided You:
>
> •      Were Totally Disabled, as defined by this Rider, through
>        the date of death,
>
> •      Became Totally Disabled prior to age 60; and
>
> •      Became Totally Disabled while insured; and
>
> •      We received the required premiums for this coverage.

(Ex. 1: PDF, pp. 61-64 / Policy, pp. 52-55).

13)    Mr. Jilek was 52 years-old when he stopped working in any capacity on 3/15/24 due to esophageal cancer with lung and brain metastasis.

14)    Better Made paid Mr. Jilek "PTO" time beginning 3/18/24 through 4/18/24.

15)    In addition to Mr. Jilek's basic life insurance under the Policy, he also received long-term disability insurance through Guardian, which policy prescribed a 180-day elimination period.

16)     Mr. Jilek actively requested information from Better Made regarding all available benefits, required processes to secure and ensure those benefits, how to apply, and any and all information that would enable him to financially protect his family.

17)     Around the end of August 2024, Mr. and Mrs. Jilek received notification that recent health insurance claims had been denied due to a lack of coverage.

18)     After he learned of this lapse, Mr. Jilek immediately contacted Better Made to inquire as to the status of his insurance.

19)     On 9/4/24, via text message, Oral Hylton, Better Made's Human Resources Director, communicated the following to "Jim," "Alexa," "Mike," "Dave," and one more individual:

> Good afternoon, Jim.  As discussed earlier today, your 12 weeks of FMLA was exhausted on July 15th.  Medical benefits were terminated at the end of July at which point COBRA is initiated.  Cobra coverage will take effect starting August 1.  I spoke to a representative at WEX in regards to possibly speeding up the process and they stated that you have yet to elect any coverage and make your initial **payment**.  The rep said you can give her a call if you have any questions with electing coverage at 866-451-3399.
>
> **Per our conversation earlier, I have mailed out your FMLA term letter** and also attached a copy of that as well as COBRA initial summary.  If you have any further questions please feel

free to reach out.  I will have a letter answering your question about the 30 day notice ready to be emailed to you some time tomorrow.  Until then, if you have any questions, please feel free to reach out to me.

**(Ex. 3)**. (emphasis added).

20)     On 9/5/24, Mr. Jilek texted Oral Hylton (Better Made), Alexa Graham (Better Made), "Mike," and two others: "Please provide me with the cobra notice you are referring to that I received. Reason I'm asking for it is because I never received it as stated in your email. **(Ex. 3)**.

21)     On 9/7/24, Alexa Graham (Better Made) texted Mr. Jilek, Oral Hylton (Better Made), "Mike," "Dave," and Mrs. Jilek as follows: "Hi Jim, Attached is the COBRA information that should have come to you directly from WEX Health, our COBRA administrator." **(Ex. 3)**.

22)     Also, on 9/7/24, Mr. Jilek responded via text to Alexa Graham (Better Made), Oral Hylton (Better Made), "Mike," and "Dave": "It would have been nice to get this before 8/29/24 when my entire family has been unknowingly uninsured since 7/16/24 causing a lapse in coverage." **(Ex. 3)**.

23)     Via 9/20/24 written correspondence, Guardian advised Mr. Jilek that it had approved his long-term disability claim, which benefits

would become payable on 11/23/24 after he satisfied the 11/22/24 (180-day) elimination period[1]. **(Ex. 4)**.

24)     Guardian sent Better Made correspondence dated 9/26/24 in which it indicated that Mr. Jilek's long-term disability benefits were payable as of 9/23/24, which was the correct date. **(Ex. 4)**.

25)     On 10/24/24 and 10/26/24, Guardian advised Mr. Jilek that it had accepted and opened a waiver of life premium claim. **(Ex. 4)**.

26)     On 10/27/24, Guardian emailed "A. Graham" (Better Made) asking for information pertaining to Mr. Jilek's group life insurance. **(Ex. 4)**.

27)     In a letter dated 10/27/24, Guardian advised Mr. Jilek:

> According to our records your coverage under the group plan terminated on 07/16/24, therefore you do not currently have any life coverage. If you are ultimately approved for the Extended Life Benefit, your coverage will be reinstated under that provision of the plan. If you have any questions regarding the termination of your coverage, please contact your employer.

**(Ex. 4)**.

28)     Mr. Jilek died on 11/13/24, within the 9-month waiver of life premium elimination period that would have expired on or about 12/18/24. *Id.*

---

[1] Although irrelevant to the instant inquiry, this is clearly a typo because Mr. Jilek satisfied the elimination period on or about 9/11/24.

29)     Guardian's 12/9/24 internal note indicates the following regarding its review of Mrs. Jilek's claim: "3/15/24 AND COVERAGE/EMPLOYMENT TERMED ON 7/15/24. EE DID NOT MEET ELIMINATION PERIOD FOR WAIVER. EE DID NOT PORT OR CONVERT POLICY.  NO COVERAGE IN FORCE UPON DOD OF 11/13/2024." **(Ex. 5)**.

30)     On 12/11/24, Guardian advised Mrs. Jilek in writing that:

> According to the information received from Bettermade Snack Foods, Mr. Jilek last worked full-time on March 15, 2024. **His group life insurance coverage terminated on July 15, 2024 and we have no record that he converted his group life insurance coverage to an individual life insurance policy with Guardian**. Please refer to the following plan provisions as stated in the group life contract issued to Bettermade Snack Foods . . .
>
> **If Your group life insurance ends, Your Employer is responsible for providing You Notice of Your Right to Convert** . . .
>
> To obtain a Converted Policy, We must receive a written application fully completed by You, and all required premiums within the Conversion Period. **Your Employer is responsible for providing You with Notice of Your Right to Convert within 15 days of the date Your group life insurance ends**. We will not ask for proof that You are insurable. In order to obtain a Converted Policy, You must satisfy all conditions required to convert within the Conversion Period.

**(Ex. 4)**. (emphasis added).

12

31)     On 1/9/25, Mrs. Jilek followed up with Oral Hylton (Better

Made) via text as follows:

> Sorry to bother you again. I forgot to mention in my last
> email that I was wondering if I could get some help
> with guardian? They denied Jim's life insurance policy
> because they said that he did not transfer his policy
> from a group policy to an individual policy. **Guardian
> stated that he had 30 days to do this but yet** _**he
> received no paperwork in regards to this and we did
> not even know his position was terminated until well
> beyond 30 days**_. They mentioned that I can appeal it but
> mentioned that you the company also could appeal this
> decision. I just wanted to get your thoughts on that
> before I move forward, thank you.

**(Ex. 3)**. (emphasis added).

32)     On 1/10/25, Jackson Mahle (Plante Moran, account manager)

emailed Alexa Graham and Oral Hylton (Better Made) as well as other

Plante Moran representatives:

> I was able to investigate this.  I spoke with Guardian's
> help desk, and they let me know that Courtney would
> need to fill out Conversion/Portability paperwork for Mr.
> Jilek's life insurance policy.  From there it would need to
> be sent over to the email or fax information listed within
> the forms.  Once received Guardian's team will review
> and either approve or deny the life insurance claim
> based on the paperwork filled out. I have attached
> conversion/ portability paperwork to this email for your
> reference.

> The attached paperwork can be provided to employees as a part of their termination paperwork package.

**(Ex. 3)**.

33)   On 1/24/25, Oral Hylton (Better Made) texted Mrs. Jilek as follows: "Good afternoon, Courtney. I got a follow up email from Jackson at Plante Moran. However, the follow up didn't address the questions surrounding Jim's life insurance policy. I emailed him back and will reach out to you once I have answers to the questions and issues you are having." **(Ex. 3)**.

34)   On 2/3/25, Mrs. Jilek followed up with Oral Hylton (Better Made) requesting an update to which he replied: "Hi, Courtney. They reached out to request an exception from Guardian to switch Jim's life insurance over to you. Currently, waiting on a response and I'll for sure reach out once I have more information. Again, thank you for your patience." **(Ex. 3)**.

35)   Mrs. Jilek again followed up with Oral Hylton (Better Made) on 3/3/25 and 3/11/25. *Id.*

36)   On 3/11/25, Oral Hylton (Better Made) responded to Mrs. Jilek as follows:

Hi, Courtney. Below is the communication we received back from Guardian.

The portability and conversion team over at Guardian got back to me today and has let me know that, unfortunately, they are unable to convert this policy. They provided this reasoning: 'We cannot issue a policy on someone who has passed. Since we did not receive the request to continue the coverage before the member passed, we cannot make an exception to continue the coverage.'  I followed up by checking with the Guardian team to see if there was any other way to get this decision overridden by our team here at PMGBA or the Better Made team or if there was any other way to get this policy converted so that the Life Insurance policy could be transferred over to Courtney and their team let me know that unfortunately, this decision cannot be overridden.

**(Ex. 3)**.

37)    On 3/11/25, Mrs. Jilek responded to Oral Hylton (Better Made): "So what does Better Made plan to do about this? It was not at the fault of Jim? Had we been notified of his termination we would have filed the appropriate paperwork." *Id.*

38)    Guardian's 5/14/25 internal notes indicate:

05/14/25: BROKER AND CLIENT MANAGER ASKING ABOUT THIS CLAIM AND OPTIONS. THE FAMILY HAD 60 DAYS TO APPEAL THE DENIAL WHICH THEY HAVE NOT AND IF THEY WANT TO APPEAL SHOULD DO SO ASAP. EE DIED W/IN THE EP SO WAS NEVER APPROVED FOR THE WAIVER BENEFIT. OUR PEND EP LTR CONFIRMED TO

BOTH EE AND PH WHEN LIFE COVERAGE WAS TERMED, THAT NO LIFE COVERAGE WAS IN EFFECT AS OF 07/16/24 AND THEY NEED TO CONTACT CONVERSION. THE GROUP DID NOT CHOOSE TO KEEP HIM ON FOR 12MOS.......

05/14/25: REVIEW CONT....THE COMPANY CANNOT CHANGE THEIR POLICY TO GO BACK AND PAY PREMIUMS TO GET A BENEFIT PAID. **THEY CHOSE TO TERM HIM ON 7/15/24 AND _SHOULD HAVE PROVIDED CONVERSION RIGHTS_**.  IF THIS WAS A [sic] ERROR THEY COULD HAVE ALSO CONTACTED GUARDIAN WHEN OUR PEND EP LTR WAS MAILED IN OCTOBER. AT THIS TIME THE FAMILY CAN APPEAL THE LIFE DENIAL IF THEY DO NOT AGREE.

**(Ex. 5)**. (emphasis added).

39)    Via 7/14/25 correspondence, Oral Hylton (Better Made) conveyed the following to Mrs. Jilek:

We are writing to provide an update regarding the group life insurance coverage through Guardian, in which James was enrolled during his employment with us.

We have been working closely with Plante Moran, our benefits advisor, to request that Guardian reverse its decision to deny your life insurance claim and make an exception to the normal  policy requirements given the circumstances. Unfortunately, we were recently notified that Guardian has declined to reverse its original decision to deny the claim.

Guardian denied the life insurance claim for two reasons:

1.      James did not meet the requirements for continuation of coverage under the waiver of premium provision, as he passed away before completing the nine-month elimination period required by the policy; and

2.      The group coverage was not converted to an individual policy within the 30-day window following the termination of his coverage under the group policy on July 16, 2024.

Attached for your reference is a copy of the Waiver of Premium Pending Elimination Period letter that Guardian sent to James on October 27, 2024.  This letter confirmed that his coverage under the group policy terminated on July 16, 2024 and that the earliest possible effective date for coverage under the waiver of premium provision would have been December 18, 2024.

In addition, the right to convert group coverage to an individual policy within 30 days following termination was outlined in the certificate of coverage, which was provided to  James at the time of coverage.

**(Ex. 3)**.

### III.      Better Made's Breach of Fiduciary Duty

40)      Mrs. Jilek incorporates by reference Paragraphs 1-39 as though fully set forth herein.

41)      Better Made was well aware that Mr. Jilek had been diagnosed with esophageal cancer that had metastasized to his lungs and brain.

42)   After his last day of work (3/15/24), Mr. Jilek regularly communicated with Better Made regarding the processing and handling of ongoing insurance coverages and benefits.

43)   Per the Policy's terms and conditions, Better Made was required to advise Mr. Jilek of his right to apply to convert from group to individual up to the full amount of his basic life insurance within 31 days after his coverage ended on 7/16/24, i.e., 8/16/24.

44)   The Policy directs that Better Made was responsible for advising Mr. Jilek of his right to apply to convert the Policy from group to individual within 15 days of the date his group life insurance ended, e.g., by 7/31/24.

45)   Better Made failed to advise, inform, or notify Mr. Jilek at any time that his employment ended on 7/15/24.

46)   Better Made failed to advise, inform, or notify Mr. Jilek until 9/4/24 that his FMLA leave was exhausted on 7/15/24, which communication was only prompted in response to the Jileks' inquiry regarding a lapse in health insurance, and which text message was offered 51 days after Mr. Jilek's leave had expired.

47)     Better Made failed to advise, inform, or notify Mr. Jilek by 7/31/24 that he had the right to apply to convert his coverage within 31 days of 7/16/24, e.g., by 8/16/24.

48)     Oral Hylton's (Better Made) 7/14/25 correspondence in which he advised Mrs. Jilek that "the right to convert group coverage to an individual policy within 30 days following termination was outlined in the certificate of coverage, which was provided to James at the time of coverage" (Ex. 3) failed to also advise her that, pursuant to express Policy terms, Better Made was required to inform Mr. Jilek about his conversion rights within a specific period of time as well as inform him of specific deadlines and the necessary steps to apply for and preserve such coverage.

49)     Despite many conversations/communications by and between Mr. Jilek and Better Made after 3/15/24 (last day of work) regarding the management of benefits, Better Made, through Oral Hylton, Alexa Graham, and/or any other corporate officer or representative failed to advise him of the various Policy provisions that would have enabled Mr. Jilek to maintain and/or convert his basic life insurance, including the option to apply for an Accelerated Life Benefit.

50)     Better Made representatives actively misled and/or failed to properly advise Mr. Jilek were, during all relevant times, acting on Better Made's behalf in its fiduciary capacity as Plan Administrator.

51)     Better Made, as Plan Administrator, had a fiduciary duty to provide relevant information about its life insurance under the Policy to a participant or his beneficiaries, e.g., Mr. and/or Mrs. Jilek.

52)     Mr. Jilek relied on Better Made's representations and omissions to his detriment.

53)     Had Better Made, as Plan Administrator, provided accurate and complete information to Mr. Jilek, he would have timely applied to convert his coverage, and Mrs. Jilek would not have lost her right to recover life insurance benefits under the Policy after his 11/13/24 death.

54)     Had Better Made, as Plan Administrator, provided accurate and complete information to Mr. Jilek, he could have applied for the Accelerated Life Benefit.

55)     Better Made's breach of fiduciary duty is the direct and proximate cause of the loss of Mr. Jilek's life insurance under the Policy and Mrs. Jilek's loss of the described insurance proceeds.

**WHEREFORE**, based upon the preceding reasons, Plaintiff prays for the following relief:

A.    A declaratory judgment pursuant to Section 502(a)(3) of ERISA, being 29 U.S.C. 1132(a)(3), and 28 U.S.C. 2201, declaring that she is entitled to the full death benefit amount of the subject Guardian Life Insurance Policy, Group Policy Number 00057051, which would have been in effect at the time of Mr. Jilek's death had Better Made properly executed its above-described fiduciary duties.

B.    A full and accurate accounting by Better Made of all computations for the referenced death benefit and other payments consistent with this Court's Order.

C.    An order compelling Better Made to pay, by way of surcharge, or other equitable relief as this Court deems appropriate, to remedy the losses sustained by Mrs. Jilek due to Better Made's breach of fiduciary duties.

D.    An order awarding Mrs. Jilek reasonable attorney fees, costs, and interest pursuant to ERISA Section 502(g)(1), 29 U.S.C. 1132 (g)(1);

E.    Such other relief as may be just and equitable.

*Signature page follows*

Respectfully submitted:

**FELDHEIM & WILENKIN, P.C.**

By:    s/ Ilana S. Wilenkin
           Ilana S. Wilenkin (P61710)
           Plaintiff's attorney
           30300 Northwestern Highway, Suite 108
           Farmington Hills, MI 48334
           (248) 932-3505; fax (248) 932-1734
           ilana@lawsmf.com

Dated: December 12, 2025